UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMI ENTERTAINMENT NETWORK,
INC.,

              Plaintiff,

                                        Case No.12-cv-12972
vs.                                  HON. GERSHWIN A. DRAIN


ZURICH AMERICAN INSURANCE
COMPANY,

              Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#14] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#12]

## I. INTRODUCTION

Plaintiff, AMI Entertainment Network, Inc. ("AMI"), and Defendant, Zurich American Insurance Company ("Zurich"), have filed Cross Motions for Summary Judgment.[1] The primary issue this Court must resolve is whether AMI is entitled to reimbursement of defense fees and costs it incurred in defense of a lawsuit, *RDI of Michigan, LLC v. Merit Industries, et al.* (the "Underlying Lawsuit"), initiated against AMI in the Oakland County Circuit Court, Pontiac, Michigan. Pursuant to this court's local rules, it is hereby ordered that the motions be resolved on the briefs submitted. See E.D. Mich. L.R. 7.1(f)(2)

---

[1] AMI moves for partial summary judgment arguing that if the Court resolves AMI's motion in AMI's favor, the only remaining question will be the reasonable amount of attorney fees and costs incurred prior to AMI's notice to Zurich.

## II.  FACTUAL BACKGROUND

### A.  Policy

Zurich entered into a contract of insurance with named insured Harbour Group, Ltd. In general, the Zurich Policy's commercial general liability coverage part requires Zurich to defend an insured against suits seeking damages for personal and advertising injury caused by an offense enumerated under the Zurich Policy.  *See* Zurich's Mot. for Summ. J., Ex. B at § I.B.1.a.

The policy provides that "no insured will, except at that insured's own costs, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."  *Id.*, § IV.2.d.  The policy also contains a Coverage Change Endorsement that requires the named insured to: "Notify [Zurich] promptly of an occurrence or offense which may result in a claim under the policy . . . and to notify us promptly of any . . . suit, in the event suit is filed, and we shall have the right to appoint defense counsel." *Id.*, Ex. C at § I.D.1.  Further, the Coverage Change Endorsement also states:

> Compliance with the reporting requirements set forth in this endorsement is a condition precedent to coverage.  You acknowledge that in the event of noncompliance, we shall not be required to establish prejudice resulting from the noncompliance, but shall be automatically relieved of liability with respect to the claim.

*Id.* at § I.D.4.

AMI states that it was formerly known as Merit Industries, Inc., and it is the successor by merger to Rowe International Corporation.  AMI claims status as an additional insured under the Zurich Policy.[2]

---

[2]  In addition to arguing that Zurich has no obligation to reimburse AMI for defense fees and costs voluntarily incurred prior to providing notice of the Underlying

### B.  Underlying Lawsuit

On July 2, 2010, RDI of Michigan, Inc., ("RDI"), filed the Underlying Lawsuit in the Oakland County Circuit Court against multiple defendants including AMI and Merit Industries, Inc.  The Underlying Lawsuit concerns various rights RDI alleges it has to a video poker game, Michigan Superstar, that RDI allegedly purchased from Merit Industries, Inc.

AMI was served with the complaint on or about July 14, 2010.  Zurich was not notified of the lawsuit until November 1, 2011.  From July 14, 2010 until November 1, 2011, there was extensive activity in the lawsuit, including motions to compel, a motion to dismiss and motions *in limine*.  In fact, a trial date had been set and was approaching when the lawsuit was removed to the United States District Court for the Eastern District of Michigan on September 6, 2011.  While in federal court, extensive litigation activity continued until the case was remanded back to the Oakland County Circuit Court on January 12, 2012.

On December 20, 2011, Zurich agreed to provide a defense against the Underlying Lawsuit pursuant to a full reservation of rights.  *See* Zurich's Mot. for Summ. J., Ex. L.  The reservation of rights letter also specifically disclaimed Zurich's obligation to reimburse any defense fees and costs incurred prior to Merit Industries, Inc.'s notice of the Underlying Lawsuit to Zurich.  *Id.*

### C.  Lawsuit Against Zurich

On May 8, 2012, AMI initiated the present action.  AMI's complaint alleges a single

---

Lawsuit to Zurich, Zurich also maintains that AMI does not qualify as an insured under the policy.  However, because the Court concludes that Zurich has no obligation to pay defense fees and costs prior to receiving notice of the Underlying Lawsuit, the Court declines to address Zurich's alternative argument in support of summary judgment.

count for Breach of Contract. AMI alleges that it has satisfied all necessary terms and conditions of the Zurich Policy and that Zurich breached the parties' contract by refusing to pay for AMI's defense fees and costs incurred prior to notice to Zurich. AMI's prayer for relief requests attorney fees and costs incurred prior to notice of the Underlying Lawsuit, as well as attorney fees and costs for having to bring the present action and pre-judgment interest. For the reasons that follow, AMI is not entitled to the relief it seeks in the complaint.

### III.  ANALYSIS

#### A.  Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."_ *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable

inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B.  The Parties' Cross Motions for Summary Judgment

The parties agree that Michigan law of contract interpretation applies to this matter. In Michigan, the rules for the interpretation of insurance policies "are the same as for any other written contract."  *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566; 489 N.W.2d 431 (1999).  An insurance policy provision that is clear and unambiguous must be given its "common and ordinary meaning" by the court and enforced as written.  *Insurance Co. of North America v. Forty-Eight Insulations*, 451 F. Supp. 1230, 1237 (E.D. Mich.

1978), *aff'd*, 633 F.2d 1212 (6th Cir. 1980); *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111; 595 N.W.2d 832 (1999). "[T]he terms of an insurance contract are interpreted according to the definitions set forth therein or, if none are provided, are given a meaning in accordance with their common usage." *Cavalier Mfg. Co. v. Employers Ins.*, 211 Mich. App. 330, 334; 535 N.W.2d 583 (1995) (citing *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 664-65; 443 N.W.2d 734 (1989)). References to standard dictionary definitions are appropriate in determining the common meaning of undefined policy language. *Twichel v. MIC Gen. Ins. Corp.*, 469 Mich. 524, 534-35; 676 N.W.2d 616 (2004). If an insurance contract is unambiguous, a court may interpret coverage as a matter of law, "and the plain meaning of the terms may not be impeached by extrinsic evidence." *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 603-04; 576 N.W.2d 392 (1997).

Here, the Court finds that the above cited policy language is clear and unambiguous on the conditions of notice and in the voluntary payment clause. This language must be enforced as written. In this case, AMI incurred over $1.3 million in defense fees and costs before it provided notice of the Underlying Lawsuit to Zurich. AMI failed to comply with two contractual provisions in the subject policy: the notice and the voluntary payment provisions. Therefore, Zurich is not liable for the pre-notice defense fees and costs incurred by AMI because AMI voluntarily paid the defense fees and costs.

In support of its motion for summary judgment, Zurich relies on *Fireman's Fund Ins. v. Ex-Cell-O Corp.*, 790 F. Supp. 1318 (1991), which held that "an insurer has no duty to defend absent a request to defend." *Id.* at 1328-29 (citing *Celina Mut. Ins. Co. v. Citizens Ins. Co.*, 133 Mich. App. 655, 662; 349 N.W.2d 547 (1984)). The *Fireman's Fund* court found that "the policyholders voluntarily chose to respond themselves" and thus were not

-6-

entitled to pre-tender fees and costs. *Id.* at 1333.

AMI was served with the complaint in the Underlying Lawsuit on or about July 14, 2010. AMI first notified Zurich of the Underlying Lawsuit on November 1, 2011, well over a year after AMI was served and appeared in the litigation. Between those dates, AMI, through its chosen counsel, engaged in extensive defense activities with motions to compel, to dismiss and *in limine*. The case was removed to federal court and litigated there before Zurich was notified of the Underlying Lawsuit. During this window of time, AMI paid defense fees and costs of over $1,300,000.00 before Zurich had any knowledge of the case. AMI also deprived Zurich of the right to defend the Underlying Lawsuit.

AMI argues that the duty to defend arises at the commencement of the Underlying Lawsuit irrespective of whether notice was given or the request to defend was sought. In making this argument, AMI relies on *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 847 (E.D. Mich. 1997), where the court essentially held that the duty to defend commences at the filing of a complaint. *Id.* at 857-59. *Aetna* disagreed with the holding in *Fireman's Fund* that the duty to defend arose upon tender. *Id.* The Court concludes that *Fireman's Fund* is more on point with the case at issue and its rationale and logic are applicable to this matter. Therefore, the Court adopts the holding in *Fireman's Fund* and finds that in the instant case, the duty to defend began at the point of notice.

AMI's argues that under *Aetna*, where a conflict of interest exists, the insured has complete control over handling the defense of the case. AMI's argument is misplaced however because this conflict, if any, did not occur until Zurich received notice of the Underlying Lawsuit and assumed the defense of the case. AMI fails to articulate the existence of a conflict of interest that arose prior to its notice to Zurich.

IV.  CONCLUSION

Accordingly, AMI's complaint seeks a judgment against Zurich for defense costs and fees incurred prior to notice of the Underlying Lawsuit.  This Court finds that AMI voluntarily incurred defense fees and costs of over $1,300,000.00 and failed to provide the proper notice of the Underlying Lawsuit to Zurich.   Therefore, Zurich's Motion for Summary Judgment [#14] is GRANTED and AMI's Motion for Partial Summary Judgment [#12] is DENIED.  This cause of action is dismissed.

SO ORDERED.

October 22, 2012                                    /s/Gershwin A Drain
Detroit, Michigan                                   GERSHWIN A. DRAIN
                                                    United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 22, 2012.

s/Tanya R. Bankston
TANYA R. BANKSTON
Case Manager

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

AMI ENTERTAINMENT NETWORK,
INC.,

               Plaintiff,

                                      Case No.12-cv-12972

vs.                                HON. GERSHWIN A. DRAIN

ZURICH AMERICAN INSURANCE
COMPANY,

               Defendant.

_____/

## JUDGMENT

      It is ordered and adjudged that pursuant to this Court's Opinion and Order dated

October 22, 2012, judgment is hereby entered in favor of defendant and against plaintiff.


      Dated at Detroit, Michigan this 22th day of October, 2012.


                                    DAVID J. WEAVER
                                    CLERK OF THE COURT

                                    BY: Tanya R Bankston

APPROVED:
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE